UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-83-R

CARLA CLIPPARD, as Administrator
of the Estate of Timothy Clippard and
CARLA CLIPPARD, Individually                                        PLAINTIFFS

v.

YAMAHA MOTOR CORPORATION, U.S.A.
and YAMAHA MOTOR CO., LTD.                                          DEFENDANTS

### MEMORANDUM OPINION AND ORDER

On January 23, 2015, the undersigned Magistrate Judge held a telephonic conference with the parties regarding a discovery dispute in this products liability action involving death by outboard boat motor. Although the parties generally agreed that some type of protective order would likely be appropriate to protect Defendant's proprietary motor design drawings, test reports, and other trade secrets, they disputed whether the protective order should be of the "sharing" or "non-sharing" variety. The Court granted Defendant leave to file a motion for a non-sharing protective order. The motion, response, and reply are at DN 35, 36, and 39. This matter is ripe for determination.

Because Plaintiff has failed to demonstrate a need to share the confidential information that Defendant will provide to her during discovery in this case with similarly-situated plaintiffs in other cases, the Court will accept Defendant's proposed non-sharing provision and ask the parties to return to negotiations of a mutually-agreeable protective order. Accordingly, Defendant's motion will be GRANTED in part and DENIED in part.

### The mutually-rejected proposals

Plaintiff's proposed sharing protective order, which Defendant rejected, is at DN 36-4, pp. 2-3; and Defendant's proposed non-sharing protective order, which Plaintiff rejected, is at DN 35-6.

According to Plaintiff's proposal, the scope of "confidential" information should be limited to "test reports and overall design drawings for the motor in question." DN 36-4, Paragraph 1. As to sharing, the confidential information: "shall not be disclosed or provided to any of Yamaha's competitors or to any public source including media, and internet sources." DN 36-4, Paragraph 2. However, Plaintiff and/or her attorney would be free to share confidential information with attorneys, consultants, and experts "involved in this litigation" and -- what is the focus of the present controversy -- with "attorneys presently or formerly involved in litigation against Yamaha which contain similar defect allegations." Paragraph 3.

In contrast, Defendant would define "confidential" information more broadly to include: "blueprints, manuals, test reports, test standards, drawings, correspondence, studies, marketing information, ECOs, specifications, graphs, charts, financial data, tax returns, accounting information," etc. DN 35-6, Paragraph 7. There would be no sharing of confidential information: "to anyone (other than those persons employed in the offices of the counsel for the parties necessary to prosecute this litigation)" and to "experts and consultants that have been actually retained in this litigation," with certain additional restrictions applying. Paragraph 4.

## Analysis

Fed.R.Civ.P. 26(c)(1)(G) provides that a court may, for good cause, issue an order to protect a party by requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.

It is within the sound discretion of the trial court to determine what information is confidential, for example, whether trade secrets are relevant and whether the need outweighs the harm of disclosure. *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 269 (6th Cir.2010). Likely, if the court deems the information confidential, the appropriate procedural safeguards (for example, sharing versus

2

non-sharing) that should attend their disclosure by means of a protective order are also a matter within the trial court's discretion. *Id.*

As indicated above, the parties' mutually-rejected proposals would define the scope of confidential information differently. While the parties provide some indication of their positions on this matter in the motion, response, and reply, their focus is upon the procedural sharing-versus-non-sharing issue. Accordingly, the Court will exercise its discretion to determine the procedural issue first and will determine the other issue at a later date in the event the parties are unable to agree.

Plaintiff has not identified any specific case she deems similar to her own, or any particular "attorneys presently or formerly involved in litigation against Yamaha which contain similar defect allegations." DN 36-4, Paragraph 3. She has not indicated how a sharing provision would benefit her in this litigation, or how she would be prejudiced in this case by being required to refrain from disseminating confidential material to litigants in other cases.

In contrast, the potential economic harm to Defendant is self-evident if the Court were to allow Plaintiff and her attorney to divulge its propriety information to plaintiffs now and in the future as they deem them to be similarly situated, with no prior opportunity to object by Defendant or monitoring by the Court.

Plaintiff seeks what one court characterized as "preemptive permission for collateral litigants to have full access to confidential materials that have yet to be produced in this litigation" in the name of "expedit[ing] the litigation process for other actions." *Beavers-Gabriel v. Medtronic, Inc.*, 2014 WL 7882099, * 2 (D.Hawai'i). Rather than granting Beavers-Gabriel "preemptive permission" to share confidential discovery materials with potential future collateral litigants, the Court indicated that any

such litigant should file a motion to "modify [the] existing non-sharing protective order so that the collateral litigant could receive confidential discovery materials." Id.[1]

A recent law journal article characterized requests similar to Plaintiff's as requests for an "upfront sharing provision." See Proportionality, Pretrial Confidentiality, and Discovery Sharing, Washington and Lee Law Review, Fall, 2014, Dustin B. Benham, Westlaw citation: "71 WLLR 2181." While some state courts have embraced upfront sharing to streamline discovery and reduce the litigation costs, "other courts, **particularly in the federal system** *(emphasis added)*, have been hostile to upfront sharing provisions." Id. at *2208 citing Long v. TRW Vehicle Safety Systems, Inc., 2010 WL 1740831 (D.Ariz.).[2]

At least one federal court within the Sixth Circuit has reached conclusions similar to those in *Beavers-Gabriel* and *Long*, rejecting a proposed sharing protective order.

In *Steede v. General Motors, LLC*, 2012 WL 2089761, the Western District of Tennessee determined that Fed.R.Civ.P. 26(c)(1), in light of Sixth Circuit authorities, gave it discretion to "limit disclosure of confidential information to non-parties or litigants in other cases, particularly where the party producing the confidential information has shown good cause for entry of a protective order." Id. at *4.[3] The Court exercised its discretion to accept the defendant's non-sharing provision because the

---

[1] "A protective order is always subject to modification or termination for good cause, even where the parties have consented to its entry." In re Southeastern Milk Antitrust Litigation, 666 F.Supp.2d 908, 914 (E.D.Tenn.2009); Manual for Complex Litigation, Fourth § 11.432; see also In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation, 664 F.2d 114 (6th Cir.1981) (district court's authority "includes the power to modify a protective order.").

[2] *Long* recognized that collateral litigants "generally have the right of access to ... the fruits of pretrial discovery." *Long* at *1. "This general right of access, however, is trumped where the defendant establishes good cause to protect discovery materials. See Fed.R.Civ.P. 26(c)(1)." Id. "[C]ollateral litigants desiring any discovery produced pursuant to the protective order will simply have to go through the appropriate steps to obtain that discovery," i.e., modification of pre-existing non-sharing provision. Id.

[3] According to *Steede*: "The Sixth Circuit has held that documents produced during discovery are not "presumptively public." [*The Courier Journal v. Marshall*, 828 F.2d 361, 364 (6th Cir.1987)]. A party who produces information in discovery continues to hold "protectable privacy interests in confidential information contained in such documents." [*Howes v. Ashland Oil, Inc.*, 1991 WL 73251, *7 (6th Cir.)]. It follows that the Court may limit any party's ability to release documents obtained in discovery whether or not a public interest attaches to the information contained in the discovery responses."

plaintiff failed to show "how this restriction, which is commonly[4] included in protective orders, prejudices her ability to obtain discovery in support of her own claims." *Id.*

Plaintiff has failed to demonstrate a need to share the confidential information that Defendant will provide her during discovery in this case with similarly-situated plaintiffs in other cases. Accordingly, the Court will accept Defendant's proposed non-sharing provision.

### *Brownlow v. General Motors Corp.*

The only federal authority from a court within the Sixth Circuit cited by Plaintiff in support of her position is this Court's decision in *Brownlow v. General Motors Corp.*, 3:05-CV-414-R, 2007 WL 2712925 (W.D.Ky.). DN 36, p. 9. *Brownlow* was a products liability action involving rollover of a GM van in which the District Court affirmed the Magistrate Judge's discovery order.

The facts of the present case are distinguishable from *Brownlow*. GM, unlike Yamaha Motor, did not object to information sharing but only the scope of vehicles that would be deemed substantially similar to the one involved in Brownlow's case and, hence, subject to sharing. See Magistrate Judge's Order, 3:05-CV-414-R, DN 60, p. 23.

Plaintiff relies upon the Magistrate Judge's statement in *Brownlow* that "judicial policy strongly favors the use of sharing CPOs [confidentiality protective orders] to streamline discovery and reduce the cost to litigants." DN 60, p. 24, citing *Wilk v. American Medical Association*, 635 F.2d 1295, 1299 (7th Cir.1980).

This statement must be read in the context of the facts of *Brownlow*. Brownlow had, in fact, already obtained information from plaintiffs involved in other litigation against GM in Alabama state court. The question before the Magistrate Judge was whether Brownlow would be allowed to utilize

---

[4] Commonly, "umbrella" or "blanket" protective orders are used in complex litigation to "expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication." Manual for Complex Litigation § 11.432. Typically, they are entered by stipulation in advance of discovery, before the parties focus on the specific issues, and are necessarily written broadly. 8A Wright & Miller, § 2044.1 refers to them as "flexible devices, subject to the district court's informed discretion."

that information in her case or whether the Court would be required to "'reinvent the wheel' to review individually documents that GM has already produced in other [] van rollover litigations to determine if such documents are discoverable." DN 60, pp. 20-21. The Magistrate Judge determined that Plaintiff would be allowed to utilize the evidence and indicated that information sharing was further supported by GM's prior sharing agreement in a similar case from Texas. DN 60, p. 24. In contrast, there is no evidence that Plaintiff now possesses information from another case she anticipates utilizing in this case, thereby placing the Court in a position of needing to "reinvent the wheel," or that Yamaha has previously agreed to information sharing in substantially-similar litigation, thereby tilting the equities in favor of information sharing in this case.

Plaintiff's reliance on *Brownlow* in support of a sharing protective order is unpersuasive.

Nor does *Wilk*, supra, support an upfront sharing provision in this case. *Wilk* merely indicated that a trial court should take a liberal approach to modifying protective orders, taking into account the needs of collateral litigants to share information, avoid duplicative discovery, reduce litigation costs, foster transparency, etc. Although it is not called upon to decide the matter at the present time, the Court has no objection to a liberal approach to modification in the event some future collateral litigant may seek to modify the present protective order to obtain needed information.[5]

---

[5] But that would occur in an adversarial context in which Yamaha Motor's interests would be protected and not merely as an exercise of Plaintiff's discretion to reveal information to individuals she deems similarly situated.


**Order**

For the foregoing reasons, Defendant's motion for a non-sharing protective order (DN 35) is GRANTED in part and DENIED in part. The parties are directed to return to negotiations of a mutually-agreeable non-sharing protective order and provide it to the Court for approval within 14 days of entry of this Order. In the event negotiations reach an impasse prior to expiration of the 14 days, the parties shall contact this office to schedule a second discovery dispute telephonic conference.